SENTENCIA
Comparece Toys “R” Us (TRU) y solicita que se revoque la sentencia del Tribunal de Apelaciones que confirmó una resolución emitida por el Departamento de Asuntos del Consumidor (Daco). En esencia, debemos determinar si proceden las multas que Daco impuso a TRU por presuntamente quebrantar la reglamentación sobre anuncios *761 engañosos. Luego de analizar el asunto, concluimos que Daco erró arbitrariamente al imponer las multas que nos ocupan, porque no están cimentadas por evidencia sustancial que obre en el expediente administrativo. OCS v. Universal, 187 DPR 164, 179 (2012).
I
Ante la promulgación del Reglamento contra prácticas y anuncios engañosos, Reglamento Núm. 7751 de 24 de septiembre de 2009, un representante de TRU participó de una reunión con el Secretario del Daco.(1) En esa reunión se discutió la Regla 13 del Reglamento Núm. 7751, id. El representante de TRU planteó la dificultad de establecer las cantidades de artículos disponibles en una venta especial, ya que el inventario de sus cuatro tiendas era variado. La recomendación del Secretario del Daco en esa reunión fue que se estableciera “la cantidad más baja de la tienda que tuviera”. Apéndice, pág. 21. El representante de TRU entendió que para satisfacer los requerimientos del Reglamento, el anuncio debía incluir la cantidad mínima como cantidad disponible de los artículos en venta especial. El 3 de noviembre de 2009, Daco emitió la Interpretación del Secretario 2009-02 en la que aclaró la aplicación del Reglamento Núm. 7751. En esa interpretación no se aclaró ex-presamente lo que se discutió en la reunión que tuvieron TRU y Daco.
Varios días después, TRU promocionó una venta especial del 15 al 21 de noviembre de 2009. Específicamente, el 16 y 18 de noviembre de 2009, un funcionario de Daco realizó desde su despacho una investigación sobre esa venta especial. La investigación, que consistió exclusivamente en examinar los anuncios publicados, llevó al investigador a *762 concluir que se violó la Regla 13(A)(1) del Reglamento Núm. 7751, supra. Las violaciones consistieron en la publicación de 48 anuncios en los que se identificó la cantidad mínima disponible de los artículos en venta especial. El inspector entendió que eso no cumplía con lo dispuesto en el Reglamento Núm. 7751, supra, que exige anunciar la cantidad disponible del artículo en venta especial por tienda. De este modo, se le notificó una multa de $400 por cada una de las 48 violaciones.
Lo anterior se repitió para las ventas especiales del 6 al 12 de diciembre y del 13 al 19 de diciembre de 2009. En todas ellas se le imputó a TRU infringir la Regla 13(A)(1) del Reglamento Núm. 7751, supra, por utilizar la frase “mínimo por tienda” para establecer la cantidad disponible de artículos. Por las ventas del 6 al 12 de diciembre de 2009 se le notificaron 21 infracciones con una multa de $400 por cada una y, en las ventas del 13 al 19 de diciembre de 2009, se le notificaron 24 infracciones y una multa de $400 por cada una.
Una vez el caso estaba ante la consideración de Daco, TRU solicitó la desestimación de las infracciones. Argüyó que Daco no podía ir en contra de sus propias acciones, dado que su Secretario les había sugerido hacer referencia al mínimo de los artículos disponibles. Añadió que la imposición de las multas no cumplió con lo dispuesto en el Reglamento para la imposición de multas, Reglamento Núm. 7750 de 24 de septiembre de 2009, y que no cometió las infracciones alegadas.
Tras la celebración de una vista administrativa y aquilatar la prueba allí presentada, Daco concluyó que las infracciones fueron cometidas y ordenó el pago de $37,600 por todas las multas impuestas. La agencia no acogió las defensas esgrimidas por TRU. Puntualizó que las directrices del Reglamento contra prácticas y anuncios engañosos, supra, eran claras al establecer que se debía incluir la cantidad de artículos disponible por tienda. A modo de conclu *763 sión, estableció que TRU no siguió la recomendación de anunciar el inventario disponible en una de sus cuatro tiendas, sino que utilizó la frase “mínimo por tienda”, independientemente de las cantidades disponibles.
Además, Daco determinó que era inaplicable el Reglamento para la imposición de multas, supra, ya que alegadamente ese se utilizaba solo en los casos donde el funcionario de la agencia visita una tienda en particular.
Inconforme, TRU presentó un recurso de revisión administrativa en el que repitió sus defensas anteriores. En síntesis, argumentó que no se violó el Reglamento contra prácticas y anuncios engañosos, supra, y que no procedían las multas impuestas. Además, adujo que si no se cumplió debidamente con el señalamiento de la cantidad de artículos disponibles lo que procedía conforme a la Regla 14 del Reglamento contra prácticas y anuncios engañosos, supra, era que se tuviera como no puesto y que la tienda ofreciera “rainchecks” a sus clientes en el caso de que la mercancía se agotara. Además, expresó que los Avisos de Infracción no cumplieron con las disposiciones del Reglamento para la imposición de multas, supra, ya que omitieron cierta información como: (i) la dirección física de la tienda intervenida; (ii) el lugar y hora en que los avisos se emitieron; (iii) las personas que recibieron las infracciones; (iv) una advertencia de que Daco podía, dentro del término de veinte días, notificar formalmente una multa administrativa, y (v) las firmas de los representantes de TRU que recibieron los avisos. TRU precisó que se le violó su debido proceso de ley al remitírsele los avisos de infracción junto con las notificaciones de las multas. Además, indicó que Daco abusó de su discreción al emitir multas múltiples por una sola violación, ya que el Reglamento Núm. 7751, supra, no lo permitía. Por su parte, Daco presentó su alegato en oposición.
Al evaluar los escritos de las partes, el Tribunal de Apelaciones concluyó que TRU violó la Regla 13(A)(1) del Re *764 glamento Núm. 7751, supra. Ese foro expresó que permitir la utilización de la palabra “mínimo” derrotaría el propósito de proveerle seguridad al consumidor sobre la cantidad disponible del artículo. Asimismo, rechazó las defensas de TRU, a saber, la doctrina de los actos propios y la violación al reglamento de multas. Determinó que la notificación de las multas fue adecuada y, a tales efectos, puntualizó que TRU tuvo conocimiento de la conducta imputada y que tuvo oportunidad de defenderse.
En desacuerdo, el 15 de septiembre de 2011, el peticionario presentó la petición de certiorari que nos ocupa. En ella repitió los mismos argumentos aducidos ante el Tribunal de Apelaciones.
El 16 de diciembre de 2011 emitimos el auto de certiorari. Con el beneficio de la comparecencia de ambas partes, pasamos a resolver la controversia ante nuestra consideración.
II
Nuestro derecho administrativo se cimenta en la norma que establece que los dictámenes de los organismos administrativos merecen la mayor deferencia judicial. The Sembler Co. v. Mun. de Carolina, 185 DPR 800, 821 (2012); Torres Santiago v. Depto. Justicia, 181 DPR 969, 1002 (2011); Vélez v. A.R.Pe., 167 DPR 684, 693 (2006). Los procesos administrativos y las determinaciones de hechos de las agencias están cobijados por una presunción de regularidad y corrección. íd.; Henríquez v. Consejo Educación Superior, 120 DPR 194, 210 (1987). La revisión judicial se circunscribe a determinar si la actuación de la agencia es arbitraria, ilegal o irrazonable. O.E.G. v. Rodríguez, 159 DPR 98, 119 (2003).
Las determinaciones de hechos de una agencia administrativa deben sostenerse por los tribunales si están respaldadas por evidencia suficiente que surja del expediente administrativo considerado en su totalidad. The Sembler Co. *765 v. Mun. de Carolina, supra, págs. 821-822; Pacheco v. Estancias, 160 DPR 409, 432 (2003). No obstante, las conclusiones de derecho serán revisables en todos sus aspectos. See. 4.5 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como la Ley de Procedimiento Administrativo Uniforme, 3 LPRA see. 2175. Ahora bien, los tribunales no deben descartar livianamente las conclusiones de derecho hechas por las agencias administrativas. Torres Santiago v. Depto. Justicia, supra, págs. 1002-1003. Por el contrario, deben dar gran peso y deferencia a las aplicaciones e interpretaciones que hagan las agencias con respecto a las leyes y reglamentos que administran. Asoc. Fcias. v. Caribe Specialty et al. II, 179 DPR 923, 940 (2010); Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 DPR 70, 75 (2000).
La deferencia que se reconoce a las decisiones de las agencias administrativas cederá cuando no se fundamente en evidencia sustancial, cuando la agencia se equivoque en la aplicación de una ley o cuando la actuación sea arbitraria, irrazonable o ilegal. OCS v. Universal, supra, pág. 179.
III
Al examinar con detenimiento el expediente de este caso y las disposiciones reglamentarias aplicables, es ineludible concluir que las multas impuestas deben ser revocadas ya que no hay evidencia sustancial en el expediente que las justifique. OCS v. Universal, supra.
La disposición reglamentaria alegadamente infringida por TRU, conforme a la decisión del Tribunal de Apelaciones, fue la Regla 13(A) del Reglamento contra prácticas y anuncios engañosos, supra. Específicamente, esa regla dis-pone que
[e]l comerciante tendrá disponible para la venta, en la tienda o en el almacén, los bienes anunciados en especial, en cantidades suficientes para responder a la demanda razonablemente anticipada durante todo el período de efectividad de la venta *766 especial anunciada, a menos que se cumpla con los siguientes requisitos:
1. el anuncio del bien en especial indica clara y adecuadamente la cantidad disponible de cada uno de los bienes en especial por tienda;
2. que la venta especial finalizará en una fecha determinada; y
3. hasta que se vendan los artículos disponibles. íd., págs. 28-29.
Por su parte, la Regla 14 del Reglamento contra prácticas y anuncios engañosos, supra, págs. 29-30, establece en lo pertinente:
REGLA 14 — ARTÍCULOS SUSTITUTOS Y VALES (“RAIN CHECKS”)
A. Cuando no se encuentre disponible para la venta el bien anunciado en especial, el comerciante vendrá obligado a ofrecer al consumidor un artículo sustituto por el precio del bien anunciado en especial.
B. En ausencia de un artículo sustituto el comerciante tendrá que pagar el valor representativo del descuento de una sola unidad en efectivo al consumidor.
C. Si el consumidor prefiere la compra del bien anunciado en especial, el comerciante deberá ofrecerle un vale (“rain check”), cumpliendo el comerciante con los siguientes requisitos:
1. conseguirle al consumidor el bien en especial dentro de los siguientes treinta (30) días calendarios;
2. dentro de los treinta (30) días notificarle al consumidor, por teléfono, por correo ordinario, o por correo electrónico, que el bien está disponible para ser recogido;
3. conservar el bien a disposición del consumidor por quince (15) días calendarios contados a partir de la notificación al consumidor; y
4. transcurrido el término de treinta (30) días, el consumidor podrá optar entre un artículo sustituto, el valor en efectivo del descuento anunciado del artículo en especial, o extender el vale por un término adicional de treinta (30) días. En el caso de optar por el artículo sustituto el precio será igual al del artículo anunciado en especial.
Basándose en la Regla 13, Daco multó a TRU porque en varios anuncios sobre ventas especiales no especificó la cantidad disponible de cada uno de los bienes en especial *767 por tienda. En esos anuncios, TRU expuso la cantidad mínima de artículos disponibles, pero no así la cantidad exacta. El Daco interpretó que esa acción violaba de forma automática la Regla 13 del Reglamento contra prácticas y anuncios engañosos, supra. Por ello, expidió las 93 multas que nos ocupan.
Al evaluar el contenido de la Regla 13, id., vemos que su propósito es regular la disponibilidad de los bienes anunciados en una venta especial. Esa regla exige, como norma general, que los comerciantes tengan suficiente mercancía para suplir la demanda durante una venta especial. Por el contrario, si no hay mercancía suficiente y se agota durante una venta especial, los comerciantes vienen obligados a ofrecer los llamados “rainchecks” o artículos sustitutos. Véase Regla 14 del Reglamento contra prácticas y anuncios engañosos, supra. Ahora bien, la propia Regla 13 reconoce unas circunstancias excepcionales en las que un comerciante no tiene que tener disponible una cantidad de mercancía razonable para suplir la demanda durante todo el tiempo de vigencia de la venta especial si cumple con indicar: (1) la cantidad de los artículos disponibles; (2) la duración de la venta especial, o (3) que la venta es hasta que se agoten los artículos disponibles. Cónsono con ello, el Secretario del Daco en su Interpretación 2009-02 explicó que “[s]i no se indican los artículos disponibles, los artículos anunciados en especial deben estar disponibles durante la efectividad de la venta especial”. Apéndice, 4ta Pieza, pág. 704.
Resolvemos que Daco erró al multar a TRU porque no indicó clara y adecuadamente la cantidad de artículos disponibles en sus ventas especiales. TRU no tenía la obligación de incluir esa información en los anuncios. La obligación de TRU, según la Regla 13, era tener la cantidad suficiente de los artículos anunciados para suplir la demanda. Como excepción, si TRU carecía de la cantidad de mercancía suficiente, tenía a su disposición cumplir con *768 los tres requisitos antes mencionados. A nuestro juicio, Daco debió investigar primero si se cumplía con el propósito principal de la Regla 13 del Reglamento contra prácticas y anuncios engañosos, supra: que el comerciante tenga la cantidad suficiente de los artículos anunciados. Solo al incumplir con esa disposición se tornaba pertinente analizar si los anuncios publicados indicaban la cantidad disponible de los artículos de venta especial. Antes de eso, el análisis de los anuncios sería prematuro e impertinente, pues el requisito del inciso (1) de la Regla 13 del Reglamento contra prácticas y anuncios engañosos, supra, cobra vigencia ante el incumplimiento del comerciante de mantener una cantidad suficiente de artículos en especial durante toda la venta.
En este caso no se evaluó el cumplimiento principal que impone la regla. Daco se limitó a evaluar cómodamente desde su despacho los anuncios publicados y no acudió a las tiendas de TRU para verificar si, efectivamente, mantenían una cantidad de mercancía suficiente para satisfacer la demanda de artículos en especial.
En otras palabras, el reglamento requiere a todo comerciante tener mercancía suficiente para satisfacer “la demanda razonablemente anticipada” del objeto ofrecido en venta especial. Regla 13(A) del Reglamento contra prácticas y anuncios engañosos, supra. Si no la tiene, no procede multarle por violar el reglamento, porque este le da otra alternativa: el comerciante puede limitar el alcance de la venta especial indicando clara y adecuadamente la cantidad de artículos por tienda, Regla 13(A)(1), id., ponerle una fecha límite a la venta, Regla 13(A)(2), id., o indicar que la venta terminará cuando se agoten los artículos disponibles, Regla 13(A)(3), id.
Si el comerciante no tenía artículos suficientes para satisfacer la “demanda razonablemente anticipada” ni escogió limitar la venta mediante las alternativas que la Regla 13, id., le provee, tampoco puede ser multado si ofreció a *769 sus clientes “un artículo sustituto por el precio del bien anunciado en especial” —Regla 14(A), id.— o si, en la alternativa, ofreció el valor en efectivo que equivale al descuento de una unidad del bien anunciado en especial. Regla 14(B), id. En ese último caso, si el cliente insiste en el artículo específico que se anunció en la venta especial, “el comerciante deberá ofrecerle un vale o ‘rain check”’. Regla 14(C), id.
Solo se puede multar al comerciante si no cumplió con alguna de estas alternativas. En este caso, como Daco no hizo una investigación de campo y el inspector se limitó a leer los anuncios (“shoppers”) desde su oficina, el expediente no contiene prueba de que el comerciante fallara en ofrecer a los clientes las alternativas descritas anteriormente. Por lo tanto, no hay evidencia sustancial en el expediente que justifique la multa impuesta.
Daco se embarcó en un análisis de la excepción, sin antes cerciorarse si existía un incumplimiento con la disposición general. Además, aquí Daco prefirió esperar a que TRU publicara no una, sino varias hojas de especiales para entonces notificarle las multas por correo ordinario.
Debido a que en el expediente administrativo no existe evidencia sustancial que demuestre que TRU no tenía una cantidad suficiente de artículos para suplir la demanda, es impertinente entrar a evaluar el contenido de los anuncios en controversia. Por el contrario, si se hubiese realizado una investigación adecuada que demostrara que TRU no tenía una cantidad suficiente de mercancía para suplir la demanda y se negaba a entregar “rain checks”, entonces habría sido pertinente analizar si los anuncios que TRU publicó cumplían con una de las excepciones que permite la Regla 13 del Reglamento contra prácticas y anuncios engañosos, supra. Cumplir con el requerimiento de la regla en los anuncios sirve únicamente para eximir a TRU de tener que proveer una cantidad suficiente de artículos por la duración de la venta especial.
*770 La irrazonabilidad de la decisión administrativa también se debe a que Daco no cumplió con su Reglamento para la imposición de multas, supra. La Regla 3 de ese Reglamento, id., pág. 1, indica que su alcance incluye “delinear las pautas que usarán los empleados y funcionarios del [Daco] en los procedimientos administrativos de imposición de multas y sanciones por infracciones a las leyes y reglamentos bajo [su] jurisdicción”. Como se aprecia, ese Reglamento no ex-cluye de su aplicación a ningún procedimiento de imposición de multas. Es decir, aplica a todos. Por su parte, la Regla 4 del Reglamento para la imposición de multas, id., pág. 2, expresa que su propósito es establecer “parámetros uniformes” en la fijación de multas administrativas.
La Regla 8 del Reglamento de imposición de multas, id., pág. 6, establece que los inspectores de Daco son los encargados de investigar y emitir avisos de infracción. Esa misma regla contiene unos requisitos que deben tener los avisos de infracción que Daco emita. En particular, esa regla indica que todo aviso de infracción contendrá:
1. Una descripción de las circunstancias personales del infractor, incluyendo, pero sin limitarse a, nombre de la persona, negocio o institución intervenida o investigada, dirección física y postal, y los números de teléfonos disponibles. En el caso de una corporación, sociedad o entidad jurídica se expresará el nombre y dirección del Presidente, o del agente residente;
2. La descripción de las circunstancias en que se realiza la inspección: lugar, fecha, hora en que se emitió el aviso, nombre de la persona o personas que reciben la infracción y su posición dentro de la estructura organizacional del negocio o institución investigada;
3. La descripción de la actuación u omisión constitutiva de violación;
4. Las disposiciones legales o reglamentarias por las cuales se le notifica el aviso de infracción;
5. Una advertencia a los efectos de que el Departamento podrá, dentro del término de veinte (20) días contados a partir de ser emitido el aviso de infracción, notificar formalmente una multa administrativa y la cantidad máxima de dinero que podría imponérsele!, y]
*771 6. Las circunstancias del empleado o funcionario que emite el mismo: nombre completo en letra de molde, la Oficina Regional, Unidad o División del Departamento en la cual trabaja y su firma. íd., págs. 8-9.
Un análisis del expediente refleja que no se cumplió con los siguientes requisitos que exige la Regla 8, id.: (1) la dirección física de las tiendas investigadas; (2) el nombre y dirección del agente residente de TRU; (3) el lugar y la hora en que se emitieron los boletos; (4) el nombre de la persona que recibió las infracciones y su posición en TRU; (5) una advertencia de que Daco podía dentro del término de veinte días contados a partir de ser emitidos los avisos de infracción notificar formalmente una multa administrativa y la cantidad máxima que podía imponerse; (6) las circunstancias de los funcionarios que emitieron las multas en cuanto a la unidad de Daco en que trabajaban; (7) las firmas de los representantes de TRU y su nombre en letra de imprenta.
Es claro que los avisos de infracción en este caso no tenían algunos de los requisitos señalados porque los inspectores de Daco no visitaron ninguna de las cuatro tiendas de TRU. Las Reglas 3 y 4 del Reglamento para la imposición de multas, supra, establecen que su alcance es lo suficientemente amplio como para incluir situaciones como esta. Reconocemos que pueden surgir situaciones en las que es innecesario cumplir con la Regla 8 del Reglamento para la imposición de multas, íd. Sin embargo, dada la naturaleza de las violaciones reglamentarias alegadas en este caso, era necesario cumplir con la Regla 8, íd. Daco incumplió con su Reglamento. Eso es contrario a la norma trillada que establece que las agencias administrativas están obligadas a observar estrictamente sus propios reglamentos. Torres v. Junta Ingenieros, 161 DPR 696, 715 (2004); T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 81 (1999); García Cabán v. U.P.R., 120 DPR 167, 175 (1987). Daco no tiene facultad para aplicar sus reglamentos solo cuando le plazca.
*772 Así pues, es ineludible concluir que Daco erró al imponer las multas en pugna al amparo de la Regla 13(A)(1) del Reglamento contra prácticas y anuncios engañosos, supra. Daco emitió las multas sin constatar la cantidad de bienes que tenía disponible TRU en las tiendas, ni cerciorarse si, en la alternativa, se ofrecían los “rainchecks” o artículos sustitutos. Solo si no se ofrecía nada de esto estaría TRU en violación del Reglamento. Daco tampoco cumplió con los requisitos que establece su Reglamento de imposición de multas, supra. A pesar de que reconocemos la deferencia que le debe el Poder Judicial a las interpretaciones ofrecidas por las agencias sobre sus propios reglamentos, en este caso, esa interpretación es irrazonable porque no hay evidencia sustancial en el expediente que demuestre que TRU no tenía cantidades disponibles de los artículos objeto de las 93 multas que nos ocupan. OCS v. Universal, supra; The Sembler Co. v. Mun. de Carolina, supra; Torres Santiago v. Depto. Justicia, supra; Vélez v. A.R.Pe., supra; O.E.G. v. Rodríguez, supra. Ausente esa prueba, no puede decirse que TRU incumplió con lo que el reglamento le requiere.
IV
Por los fundamentos antes expuestos, revocamos la determinación irrazonable de Daco ante la ausencia de evidencia sustancial que la justifique. Se dejan sin efecto todas las multas que Daco impuso a TRU.
Lo acordó y ordena el Tribunal, y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada Oronoz Rodríguez concurrió con el resultado sin opinión escrita. La Juez Asociada Señora Rodríguez Rodríguez emitió un voto particular disidente, al cual se unió la Jueza Presidenta Señora Fiol Matta.
(.Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

 El Reglamento contra prácticas y anuncios engañosos, Reglamento Núm. 7751 de 24 de septiembre de 2009 fue derogado por el Reglamento contra prácticas y anuncios engañosos Núm. 7932 de 15 de octubre de 2010.